REVISED November 13, 2009

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

November 12, 2009

Charles R. Fulbruge III
Clerk

No. 08-60978

CHAUNCEY M DEPREE, JR

Plaintiff-Appellant

v.

MARTHA SAUNDERS, Individually and as President of the University of
Southern Mississippi; DARRELL J GRIMES, Individually as a former
Provost, University of Southern Mississippi; ALVIN J WILLIAMS,
Individually and as Interim Dean of the College of Business, University of
Southern Mississippi; STEVEN JACKSON, Individually and as Interim
Director of the School of Professional Accountancy and Information Systems;
STANLEY X LEWIS, Individually and as former Director of the School of
Professional Accountancy and Systems; FARHANG NIROOMAND,
Individually and as former Associate of Dean of the College of Business;
D HAROLD DOTY, Individually and as former Dean of the College of
Business; PATRICIA MUNN, Individually; JOHN ALBERT BROWN,
Individually; JAMES HENDERSON, Individually; MARY ANDERSON,
Individually; RODERICK POSEY, Individually; CHARLES JORDAN,
Individually; GWENDOLYN PATE, Individually; JOHN DOES 1-80

Defendants-Appellees

Appeal from the United States District Court
for the Southern District of Mississippi

Before JONES, Chief Judge, and HIGGINBOTHAM and HAYNES, Circuit
Judges.

EDITH H. JONES, Chief Judge:

Dr. DePree, a tenured professor, sued the University of Southern Mississippi's president and various administrators and faculty members ("Appellees") after he was removed from teaching duties in August 2007 and evicted from his office in the College of Business. The district court granted summary judgment in favor of the Appellees and denied DePree's motion for temporary and permanent injunctive relief. On appeal, we AFFIRM the judgment in favor of the individual defendants but REVERSE and REMAND for further consideration of injunctive relief.

## BACKGROUND

In August 2007, Dr. Martha D. Saunders, the University's president, received a letter from Alvin J. Williams, Interim Dean of the College of Business. The letter stated that, "Dr. DePree has engaged in behaviors that have severely constrained the capacity of SAIS [School of Accountancy and Information Systems] and the College of Business" and that DePree had helped to create "an environment in which faculty members and students do not feel safe to go about their usual business." Williams described specific and ongoing instances of what he perceived to be DePree's negative and disruptive behavior. Williams also asserted that DePree was the only Accounting faculty member who had failed to "engage in the scholarly or professional activities necessary to be labeled 'academically-qualified' or 'professionally-qualified' by the University's accrediting agency, AACSB [Association to Advance Collegiate Schools of Business]." Enclosed with this letter were eight other letters from professors who described DePree's disruptive and intimidating behavior.

Saunders wrote to DePree that she was referring the complaints to the Provost for further proceedings and was relieving DePree of all teaching

functions and service obligations to the University. He was instructed not to enter the business school except to retrieve personal items, but he should continue his research activities with access to the University computer system and library. At Saunders's request, the Provost directed the university Ombudsman to investigate all charges against DePree.

DePree filed suit within weeks of receiving the letter. He asserted that the Appellees retaliated against him because he maintains a website that is critical of the University and some of its faculty and administrators and because he complained to the accreditation agency (AACSB) about the school. DePree alleged First Amendment retaliation, Due Process violations, and various state law claims. The district court denied his request for a TRO.

Pursuant to the University Ombudsman's recommendation issued in a December report, Saunders advised DePree that the University intended to enlist the services of a mental health professional to assess his fitness to teach; that he had to produce sufficient scholarly work to satisfy independent professionals; and that the restrictions in her previous letter would remain in place. To this court's knowledge, the University has taken no further action since that time. DePree's pay, benefits, title and tenure have remained as they were before these events occurred. DePree, however, has refused to undergo a mental health evaluation or to comply with the professional research requirements.

The district court granted the Appellees' motion for summary judgment. The court held that DePree failed to show a constitutional violation because he had not been subjected to an adverse employment action and did not have a protectible property interest in teaching as opposed to research. The court also

rejected DePree's state law claims on the merits and, alternatively, on the basis of state law qualified immunity. DePree has appealed.

## DISCUSSION

This court reviews the district court's grant of summary judgment de novo, applying the same standards as the district court. Freeman v. Tex. Dep't of Criminal Justice, 369 F.3d 854, 859–60 (5th Cir. 2004). Summary judgment is warranted if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). We address DePree's constitutional claims first, followed by his state law claims.

A.    First Amendment

DePree contends that his right to freedom of speech was infringed by Saunders's disciplinary actions taken in retaliation for his website and his complaints filed with the AACSB. To establish a constitutional claim for First Amendment retaliation, four elements must be shown: (1) that plaintiff "suffered an 'adverse employment decision'"; (2) that the plaintiff's "speech involved a 'matter of public concern'"; (3) that the plaintiff's "'interest in commenting on matters of public concern . . . outweighs the [d]efendant's interest in promoting [workplace] efficiency'"; and (4) that the plaintiff's speech motivated the defendant's action. Beattie v. Madison County Sch. Dist., 254 F.3d 595, 601 (5th Cir. 2001) (quoting Harris v. Victoria Indep. Sch. Dist., 168 F.3d 216, 220 (5th Cir. 1999)). See also Garcetti v. Ceballos, 547 U.S. 410, 126 S. Ct. 1951 (2006). The parties do not here dispute the second and third factors, which

bear on the constitutional protection afforded DePree's speech.[1]   Appellees contend, however, and the trial court agreed, that DePree did not establish an adverse employment action because all tangible accoutrements of his position—except teaching duties—remained stable.  Appellees also contend that in light of DePree's outbursts of disruptive conduct, his protected speech was not a "substantial" or "motivating" factor leading to the terms of discipline.  Brady v. Houston Indep. Sch. Dist., 113 F.3d 1419, 1423 (5th Cir. 1997) (citing Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 283–87, 97 S. Ct. 568, 574–76 (1977)).

To analyze the liability of the Appellees sued in their individual capacity, we will assume arguendo that DePree's evidence raised genuine, material fact issues sufficient to withstand summary judgment.  Even so, the court correctly granted summary judgment because Saunders, the ultimate decision-maker, is shielded by qualified immunity, and the other Appellees, both faculty and administrators, merely contributed to her decision-making process.

First, if DePree's speech was constitutionally protected, Saunders was entitled to qualified immunity because her conduct did not violate a clearly established constitutional right.  Foley v. Univ. of Houston Sys., 355 F.3d 333, 337 (5th Cir. 2003).  "Qualified immunity protects public officials from suit unless their conduct violates a clearly established constitutional right."  Mace v. City of Palestine, 333 F.3d 621, 623 (5th Cir. 2003).  The qualified immunity standard "gives ample room for mistaken judgments," Malley v. Briggs, 475 U.S. 335, 343, 106 S. Ct. 1092, 1097 (1986), by protecting "all but the plainly

---

[1]  Whether DePree's speech would receive protection following Garcetti v. Ceballos, supra, is not clear on the incomplete record before us, but we do not go behind the parties' current positions.

incompetent or those who knowingly violate the law." Id. at 341, 1096. Thus, a public official is entitled to qualified immunity unless a plaintiff demonstrates (1) a violation of a constitutional right and (2) that the right at issue was clearly established at the time of the violation. Pearson v. Callahan, ___ U.S. ___, 129 S. Ct. 808, 815–16 (2009). Following Pearson, a court has discretion to render judgment on an official's qualified immunity without reaching the first question. Id. at 818.

Here, no clearly established law informed Saunders that the particular discipline she imposed, which fell far short of demotion or removal, constituted an adverse employment action. In the educational context, this court has held that "[a]ctions such as 'decisions concerning teaching assignment, pay increases, administrative matters, and departmental procedures,' while extremely important to the person who has dedicated his or her life to teaching, do not rise to the level of a constitutional deprivation." Harrington v. Harris, 118 F.3d 359, 365 (5th Cir. 1997) (quoting Dorsett v. Bd. of Trs. for State Colleges & Univs., 940 F.2d 121, 123 (5th Cir. 1991)). These cases undermine DePree's assertion that he suffered an actionable adverse employment decision. In 2006, however, the Supreme Court held that for purposes of a Title VII retaliation claim, an adverse employment action is one that "a reasonable employee would have found . . . [to be] materially adverse, 'which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of [retaliation].'" Burlington N. and Santa Fe Ry. Co. v. White, 548 U.S. 53, 68, 126 S. Ct. 2405, 2415 (2006) (quoting Rochon v. Gonzales, 438 F.3d 1211, 1219 (D.C. Cir. 2006)). Because this court has not formally applied Burlington to First Amendment retaliation claims, the interrelation among Harrington, Dorsett, and

Burlington yields no "clearly established law" that Saunders would have known she was violating by revoking DePree's teaching duties and access to the business school. At most, these cases create a fact issue to whether DePree suffered a material adverse employment action. Similarly, no clearly established law dictated that Saunders could not impose discipline, notwithstanding a few references to DePree's "speech," in light of the uniform reports about his intimidating and disruptive behavior. In sum, this court cannot conclude that Saunders's action was objectively unreasonable, "assessed in light of the legal rules that were clearly established at the time it was taken." Pearson, 129 S. Ct. at 822 (quoting Wilson v. Layne, 526 U.S. 603, 614, 119 S. Ct. 1692, 1699 (1999)). In First Amendment retaliation cases , "[t]here will rarely be a basis for a priori judgment that the termination or discipline of a public employee violated 'clearly established' constitutional rights." Noyola v. Tex. Dep't of Human Res., 846 F.2d 1021, 1025 (5th Cir. 1988).

Second, with respect to the other Appellees, "only final decision-makers may be held liable for First Amendment retaliation employment discrimination under § 1983." Johnson v. Louisiana, 369 F.3d 826, 831 (5th Cir. 2004). The statements and actions of ordinary employees or co-workers may not normally be imputed to the employer. Long v. Eastfield College, 88 F.3d 300, 306 (5th Cir. 1996). "Nevertheless, when the person conducting the final review serves as the 'cat's paw' of those who were acting from retaliatory motives, the causal link between the protected activity and adverse employment action remains intact." Gee v. Principi, 289 F.3d 342, 346 (5th Cir. 2002). DePree asserts that, although Saunders was the final decision-maker in his case, the remaining Appellees may be liable under the cat's paw exception.

To support this theory, DePree was required to "submit evidence sufficient to establish two conditions: (1) that a co-worker exhibited [retaliatory] animus, and (2) that the same co-worker 'possessed leverage, or exerted influence, over the titular decisionmaker.' " Roberson v. Alltel Info. Servs., 373 F.3d 647, 653 (5th Cir. 2004) (quoting Russell v. McKinney Hosp. Venture, 235 F.3d 219, 227 (5th Cir. 2000)). Regardless of any evidence of retaliatory animus, DePree offered no evidence that the other Appellees exerted influence over Saunders in such a way as to co-opt her decision making. Unlike cases in which this court has discerned a triable fact issue on a cat's-paw theory, see, e.g., Long, 88 F.3d at 307, the faculty members who authored letters to Saunders were neither supervisors of DePree nor part of a committee tasked with overseeing his work. They did not have authority to make recommendations concerning his employment status, and their opinions were entitled to no special weight because of their positions. Notably, the measures put in place by Saunders were not recommended in any of these letters, and she was entitled to rely on the Ombudsman's wholly dispassionate conclusions and recommendations.

A jury issue can arise from a decision-maker's reliance on the views of supervisors rather than her findings from an independent investigation. See, e.g., Gee, 289 F.3d at 346–47 (holding that plaintiff provided sufficient evidence that the final decision-maker was improperly influenced by the plaintiff's supervisor against whom the plaintiff had filed a sexual harassment complaint). That is not the case here. Saunders acted in response to written comments from numerous non-supervisory employees, and she commissioned a neutral investigation. She could not be a cat's paw of those who had no "influence or leverage over" her final employment decisions. See Price Waterhouse v. Hopkins,

490 U.S. 228, 277, 109 S. Ct. 1775, 1804–05 (1989) (O'Connor, J., concurring) ("Nor can statements by nondecisionmakers . . . suffice to satisfy the plaintiff's burden . . . ."). The other Appellees did not stand in such a relationship to Dr. Saunders as to make her their cat's paw; hence they could not be liable for the discipline imposed on DePree.

Notwithstanding that DePree may not pursue this action against the Appellees individually, DePree's claim against University administrators in their official capacity may yield prospective injunctive relief. See Will v. Mich. Dep't of State Police, 491 U.S. 58, 71, 109 S. Ct. 2304, 2312 (1989). Issues surrounding the protected status of the speech, whether there is an actionable adverse action, and whether Saunders could have legitimately disciplined DePree for his conduct despite some element of First Amendment retaliation are factually complex. Further, the late intervention of the Ombudsman report and Saunders's response to it have created a factual moving target. Due to these uncertainties, we remand DePree's injunctive claim based on First Amendment retaliation for further development.

B.    Due Process

DePree contends that the Appellees violated the Due Process Clause by preventing him from teaching and denying him access to the business school. The threshold requirement of any due process claim is the government's deprivation of a plaintiff's liberty or property interest. See Moore v. Miss. Valley State Univ., 871 F.2d 545, 548 (5th Cir. 1989). Without such an interest, "no right to due process accrues." Id. The district court concluded that because DePree's tenure, salary and title remained intact, and he had no property

interest in teaching, he had not been deprived of a constitutional property right. We agree.

A "person's interest in a benefit is a 'property' interest for due process purposes if there are . . . rules or mutually explicit understandings that support [the] claim of entitlement to the benefit . . . ." Perry v. Sinderman, 408 U.S. 593, 601, 92 S. Ct. 2694, 2699 (1972). Constitutionally protected property interests are created and defined by understandings that "stem from an independent source such as state law . . . ." Bd. of Regents v. Roth, 408 U.S. 564, 577, 92 S. Ct. 2701, 2709 (1972). Courts have held that no protected property interest is implicated by reassigning or transferring an employee absent a specific statutory provision or contract term to the contrary. See Kelleher v. Flawn, 761 F.2d 1079, 1087 (5th Cir. 1985). See also Maples v. Martin, 858 F.2d 1546, 1550–51 (11th Cir. 1988); Hulen v. Yates, 322 F.3d 1229, 1240 (10th Cir. 2003); Wagner v. Tex. A&M Univ., 939 F. Supp. 1297, 1312 (S.D. Tex. 1996). DePree's reliance on the faculty handbook is inapposite, nor has he pointed to any Mississippi law or contract between him and the University reflecting an understanding that he has a unique property interest in teaching.

DePree also asserts that his liberty interest was violated because he was stigmatized by the discipline process. See Kelleher, 761 F.2d at 1087. To the contrary, there is no evidence that Saunders or any of the other Appellees made public charges against DePree. Further, "mere injury to reputation, even if defamatory, does not constitute the deprivation of a liberty interest." Finch v.

Fort Bend Indep. Sch. Dist., 333 F.3d 555, 561 n.3 (5th Cir. 2003) (citing Paul v. Davis, 424 U.S. 693, 711–12, 96 S. Ct. 1155, 1165–66 (1976)).[2]

C.     State Law Claims

Turning to DePree's state law claims, the district court held that DePree could not establish breach of contract because his salary and benefits remained unaffected, precluding a finding of damages.  DePree did not raise this issue in his initial brief but addressed it only in his reply brief.  "This court will not consider a claim raised for the first time in a reply brief."  Yohey v. Collins, 985 F.2d 222, 225 (5th Cir. 1993).  Accordingly, this issue is waived on appeal and we do not consider it.

DePree's complaint also asserted various state law tort claims, including tortious interference with business relations, intentional infliction of emotional distress, breach of contractual duty of good faith and fair dealing, defamation, and assault.  The district court held that DePree had not exhausted his administrative remedies as required by the Mississippi Tort Claims Act ("MTCA").  Alternatively, the court held that even if DePree had complied with the procedural requirements of the MTCA, the claims still failed because the Appellees were protected by sovereign immunity.  DePree contends on appeal that the MTCA does not apply to the claims he has alleged because they involve fraud, malice, libel, slander, and defamation.

The MTCA provides:

---

[2] DePree makes a fleeting reference in his brief to a blog post that was published shortly after Saunders's action on August 22, 2007.  He infers that Saunders or someone else disclosed or published adverse information.  There is, however, no record citation for this blog, nor anything other than DePree's speculation linking Appellees to the blog.

> An employee may be joined in an action against a governmental entity in a representative capacity if the act or omission complained of is one for which the governmental entity may be liable, but no employee shall be held personally liable for acts or omissions occurring within the course and scope of the employee's duties. For the purposes of this chapter an employee shall not be considered as acting within the course and scope of his employment and a governmental entity shall not be liable or be considered to have waived immunity for any conduct of its employee if the employee's conduct constituted fraud, malice, libel, slander, defamation or any criminal offense.

Miss. Code Ann. § 11-46-7(2) (2009).

The Mississippi Supreme Court has made clear that only the intentional torts listed in the MTCA preclude an individual's claim of immunity. Duncan v. Chamblee, 757 So. 2d 946, 950 (Miss. 1999). Thus, the Appellees are shielded by the MTCA from DePree's claims for tortious interference with business relations, intentional infliction of emotional distress, and breach of contractual duty of good faith and fair dealing because they were all acting within the course and scope of their employment.

As Appellees concede, DePree's remaining claims of defamation and assault fall outside the protections of the MTCA. Regardless, the summary disposition of DePree's defamation claim can be affirmed on other grounds that were argued below. Defamation requires, among other things, "unprivileged publication to a third party." Stephens v. Kemco Foods, Inc., 928 So. 2d 226, 233 (Miss. Ct. App. 2006). Saunders's affidavit states that she did not publish or reveal any of the charges against DePree, and DePree offers no admissible evidence to refute Saunders's assertion. DePree has failed to raise a genuine issue of material fact that would allow his defamation claim to survive summary judgment.

This leaves only DePree's assault claim against Appellee Niroomand. Under Mississippi law, assault occurs where a person "(a) . . . acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and (b) the other is thereby put in such imminent apprehension." Webb v. Jackson, 583 So. 2d 946, 951 (Miss. 1991). According to DePree, Niroomand "aggressively walk[ed] toward [DePree], yelling at [him], repeatedly referring to [him] as a 'son-of-a-bitch,' and shaking papers in his face creat[ing] an apprehension in [DePree] of an imminent harmful or offensive contact." Appellee Niroomand contends that DePree's apprehension was not reasonable. We agree. Taken in context, these statements and actions could not create a reasonable apprehension of imminent, harmful contact. DePree and Niroomand had squared off in similar past confrontations without offensive contact. Nothing in the current claim suggests DePree could have reasonably feared Niroomand just because he cursed and rattled papers in DePree's face. No triable fact issue of an assault arose here.

CONCLUSION

For the foregoing reasons, the judgment in favor of all Appellees sued in their individual capacity is AFFIRMED. The judgment denying injunctive relief is REVERSED and REMANDED for further consideration.

AFFIRMED IN PART; REVERSED AND REMANDED IN PART.