# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

October 19, 2012

No. 12-20080

Lyle W. Cayce
Clerk

ACE AMERICAN INSURANCE COMPANY,

Plaintiff - Appellee

v.

M-I, L.L.C.,

Defendant - Appellant

Appeal from the United States District Court
for the Southern District of Texas

Before HIGGINBOTHAM, ELROD, and HAYNES, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

The district court granted a motion for partial summary judgment, finding that the Outer Continental Shelf Lands Act ("OCSLA") applied to the parties' contractual dispute, and thus, pursuant to the OCSLA choice of law provision, Louisiana law applied, under which the Louisiana Oilfield Indemnity Act ("LOIA") invalidated the indemnity provisions. M-I, L.L.C. ("M-I") timely appealed.

M-I has provided performance fluids management services for British Petroleum's ("BP") drilling operations at multiple locations throughout the United States for over twelve years. M-I and BP entered into a Master Services Agreement ("MSA"), effective February 1, 2009, which governed all future offshore drilling services that M-I would perform for BP on both vessels and

stationary platforms in the Gulf of Mexico. Although the MSA included detailed terms, it did not itself call for the performance of any work. Instead, it provided that BP would issue work orders for work to be performed by M-I, which M-I was not obligated to accept. In practice, BP did not issue formal work orders to M-I. Rather, M-I assigned a team of its employees to work at BP's offices with BP employees so that BP could communicate directly to M-I, often orally, when it needed M-I to perform work.

The current dispute concerns the MSA's indemnification provisions and the insurance agreements supporting M-I's indemnification obligations. Specifically, the MSA obligated M-I to indemnify BP for personal injury claims asserted by M-I employees arising from or relating to performance of the MSA. The MSA required M-I and BP to support their indemnity obligations with insurance. As required, M-I procured from ACE American Insurance Co. ("ACE") both a workers' compensation/employers' liability policy and a commercial general liability policy, requiring ACE to indemnify and defend M-I against workers' compensation claims brought by its employees and against claims by its employees arising in the course of their employment. The commercial general liability policy also covered M-I's contractual obligations to indemnify third-parties such as BP.

Charles Herandez, a M-I employee who had worked on numerous vessels and platforms operated by different companies, including BP, was injured in October 2009 while working aboard the Thunder Horse, a stationary platform operated by BP. Hernandez filed a workers' compensation claim against M-I as well as a personal injury lawsuit against M-I and BP in Texas state court. In accordance with the indemnity terms in the MSA, BP tendered Hernandez's claims in the state court lawsuit to M-I and M-I accepted BP's tender. M-I entered into a settlement of all of Hernandez's claims.

ACE then filed an action for declaratory judgment, seeking a declaration that ACE does not owe M-I coverage payments for any claims asserted against

No. 12-20080

M-I or BP in Hernandez's suit. M-I filed state law counterclaims against ACE for breach of contract and violations of Chapters 541 and 542 of the Texas Insurance Code. M-I moved for summary judgment as to its counterclaims and ACE moved for partial summary judgment on the applicability of OCSLA to the dispute. The district court granted ACE's motion for partial summary judgment. We affirm.

## I.

The sole issue on appeal is whether, pursuant to the OCSLA, Louisiana law governs the indemnity provisions. 43 U.S.C. § 1333(a), the OCSLA choice of law provision, provides:

> (1) The Constitution and laws and civil and political jurisdiction of the United States are extended to the subsoil and seabed of the outer Continental Shelf and to all artificial islands, and all installations and other devices permanently or temporarily attached to the seabed, which may be erected thereon for the purpose of exploring for, developing, or producing resources therefrom, or any such installation or other device (other than a ship or vessel) for the purpose of transporting such resources, to the same extent as if the outer Continental Shelf were an area of exclusive Federal jurisdiction located within a State . . . .

> (2)(A) To the extent that they are applicable and not inconsistent with this subchapter or with other Federal laws and regulations of the Secretary now in effect or hereafter adopted, the civil and criminal laws of each adjacent State, now in effect or hereafter adopted, amended, or repealed are declared to be the law of the United States for that portion of the subsoil and seabed of the outer Continental Shelf, and artificial islands and fixed structures erected thereon, which would be within the area of the State if its boundaries were extended seaward to the outer margin of the outer Continental Shelf . . . .[1]

---

[1] 43 U.S.C. § 1333(a).

If, pursuant to the OCSLA, the adjacent law of Louisiana applies, then the LOIA would invalidate the indemnity agreements at issue. The LOIA provides:

> Any provision contained in, collateral to, or affecting an agreement pertaining to a well for oil, gas, or water, or drilling for minerals which occurs in a solid, liquid, gaseous, or other state, is void and unenforceable to the extent that it purports to or does provide for defense or indemnity, or either, to the indemnitee against loss or liability for damages arising out of or resulting from death or bodily injury to persons, which is caused by or results from the sole or concurrent negligence or fault (strict liability) of the indemnitee, or an agent, employee, or an independent contractor who is directly responsible to the indemnitee.[2]

The district court below found that the OCSLA applied, under which the LOIA invalidated the indemnity provisions. We agree.

Under *United Texas Petroleum Corp. v. PLT Engineering, Inc.*, three requirements must be met for state law to apply as surrogate federal law under the OCSLA. First, "[t]he controversy must arise on a situs covered by the OCLSA (i.e. the subsoil, seabed, or artificial structures permanently or temporarily attached thereto)."[3] Second, "[f]ederal maritime law must not apply of its own force."[4] Third, "[t]he state law must not be inconsistent with Federal law."[5] The parties do not dispute the third requirement—that state law is not inconsistent with federal law. The district court found all three requirements were met and granted ACE's motion for partial summary judgment on the issue of the OCSLA's applicability. We affirm the district court's judgment.

---

[2] LA. REV. STAT. § 9:2780(B).

[3] *United Tex. Petroleum Corp. v. PLT Eng'g, Inc.*, 895 F.2d 1043, 1047 (5th Cir. 1990).

[4] *Id.*

[5] *Id.*

No. 12-20080

## II.

"This Court reviews de novo a district court order granting a motion for summary judgment, applying the same standards as did the district court."[6] Under Rule 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[7]

### A.

Turning to the first requirement of the *PLT* test, the controversy at issue must arise on an OCSLA situs, namely the seabed, subsoil, and fixed structures of the outer Continental Shelf. We find the indemnity dispute arises on an OCSLA situs, specifically on a stationary platform.

The situs of the controversy in a contractual dispute depends on the focus of the contract.[8] Under the focus-of-the-contract test, a contractual dispute "arises under an OCSLA situs if a majority of the work called for by the contract is on stationary platforms or other enumerated OCSLA situses."[9] In articulating the focus-of-the-contract test in *Grand Isle Shipyard, Inc. v. Seacor Marine LLC*, this Court specifically explained the analysis to be used when the parties have entered into a blanket agreement that does not itself call for the performance of specific work.[10] It explained:

> As we discussed in *Davis & Sons v. Gulf Oil Corp.*, it is a common practice for companies contracting for work in the oilfield to enter

---

[6] *Greater Hous. Small Taxicab Owners Ass'n v. City of Houston*, 660 F.3d 235, 238 (5th Cir. 2011) (quoting *DePree v. Saunders*, 588 F.3d 282, 286 (5th Cir. 2009)).

[7] Fed. R. Civ. P. 56.

[8] *Grand Isle Shipyard, Inc. v. Seacor Marine, LLC*, 589 F.3d 778, 784 (5th Cir. 2009) (en banc).

[9] *Id.* at 787.

[10] *Id.* at n.6.

into contracts in two stages. Typically, they first sign a "blanket contract" that may remain in place for an extended period of time. Later, they issue work orders for the performance of specific work, which usually incorporates the terms of the blanket contract. As we said in *Davis & Sons*, where the contract consists of two parts, a blanket "contract followed by later work order, the two must be interpreted together."

Generally, each work order is for a discrete, relatively short-term job. Unless a contrary intent is reflected by the master contract and the work order, in determining situs in a contract case such as this, courts should ordinarily look to the location where the work is to be performed pursuant to the specific work order rather than the long term blanket contract.[11]

We conclude that *Grand Isle* governs M-I's appeal. Here, M-I and BP entered into a "blanket" MSA. Although the MSA included detailed terms, even stipulating the platforms and vessels on which M-I may perform work for BP, it did not call for any specific work to be performed. Instead, the MSA required specific job assignments, such that those job assignments, incorporating the terms of the MSA, converted the MSA into a contract governing work. Under the MSA, BP was not obligated to request work from M-I and M-I was not obligated to accept work orders issued by BP.

That BP did not issue a formal work order to M-I for Hernandez's work on the Thunder Horse is not determinative; the MSA did not require formal work orders. Some direction was needed to authorize M-I to perform work for BP and M-I's creation of service tickets and time sheets, tied to each particular platform or vessel where M-I performed work under the MSA, provide evidence of the location where work was to be performed pursuant to the specific work order as well as the scope of that particular work order. Under *Grand Isle* we look to the location of the majority of the work pursuant to the specific work order. Focusing on the location of the specific work order is not a return to the

---

[11] *Id.* (citations omitted).

"fortuitous" location of the injury approach. There is nothing fortuitous about determining the applicable law by looking to the location of the specific work order.

## B.

Turning to the second requirement of the *PLT* test, in order for the OCSLA choice of law provision to apply, maritime law must not apply of its own force. Determining whether maritime law applies of its own force involves a two-step inquiry—first, an examination of the historical treatment of contracts of that type in the jurisprudence and second, a six-factor "fact-specific" inquiry into the nature of the contract.[12] Here, the district court found that maritime law did not apply because the work Hernandez performed on the Thunder Horse was not maritime in nature. We agree.

Under *Davis & Sons, Inc. v. Gulf Oil Corp.*, explicitly endorsed in *Grand Isle*, we must analyze whether the particular work order, not the blanket contract, is maritime in nature.[13] Because the relevant contract here—the work assignment Hernandez was completing on the Thunder Horse—was performed on a stationary platform, not a traditional maritime activity, it follows that maritime law does not apply of its own force to the indemnity dispute.

---

[12] *Davis & Sons, Inc. v. Gulf Oil Corp.*, 919 F.3d 313, 316 (5th Cir. 1990). The six factors are: (1) What does the specific work order in effect at the time of injury provide? (2) What work did the crew assigned under the work order actually do? (3) Was the crew assigned to work aboard a vessel in navigable waters? (4) To what extent did the work being done relate to the mission of that vessel? (5) What was the principal work of the injured worker? (6) What work was the injured working doing at the time of the injury? *Id.*

[13] *Id.* at 315 ("If, as in this case, the contract consists of two parts, a blanket contract followed by later work orders, the two must be interpreted together in evaluating whether maritime or land law is applicable to the interpretation and enforceability of the contract's provisions. The blanket contract is not of itself complete and calls for no specific work. The actual contract between the parties therefore consists of the blanket agreement as modified by the later work order.").

No. 12-20080

## III.

The parties do not dispute the third requirement of the *PLT* test—that state law not be inconsistent with federal law. We agree with the district court's analysis of the issue and see no need to further address it here.

## IV.

We AFFIRM.