Charles L. KEMP, Plaintiff,

v.

GULF OIL CORPORATION,
Defendant-Appellee,

v.

DRAVO ENGINEERS & CONSTRUC-
TORS, INC., Third-Party
Defendant-Appellant.

No. 83–2544
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

June 21, 1984.

Weller, Wheelus & Green, Kyle Wheelus, Jr., William M. Tolin, III, Beaumont, Tex., for third-party defendant-appellant.

Provost, Umphrey, Doyle & McPherson, Port Arthur, Tex., Strong, Pipkin, Nelson, Parker & Bissell, David Ledyard, Michael L. Baker, Beaumont, Tex., for defendant-appellee.

Before JOLLY, HIGGINBOTHAM and DAVIS, Circuit Judges.

PER CURIAM:

Dravo Engineers & Constructors, Inc. (Dravo) appeals a jury verdict rendered in this diversity case finding it ten percent negligent for injuries its employee, Charles L. Kemp, sustained while working on a construction project at a Gulf Oil Corporation (Gulf) coke plant. We hold that the district court correctly concluded that Kemp sustained his injuries in connection with work performed on the Dravo construction project and that the record contains evidence sufficient for the jury to attribute ten percent of the liability for the accident to Dravo. We therefore affirm the order of the district court.

I.

Dravo entered into a contract with Gulf for Dravo, as an independent contractor, to construct additions to a Gulf coke manufacturing plant in Port Arthur, Texas. The contract contained an indemnity clause in which Dravo

> agree[d] to ... indemnify and save harmless [Gulf] from all loss or damage and all claims and suits, and cost of defending same by reason of injuries (including death) to any persons ... in connection with [Dravo's] work whether arising out of the concurrent negligence on the part of [Gulf] or otherwise.

Thus, under the terms of the indemnity clause, if Dravo were in the least negligent "in connection with" the construction work

and Gulf sustained a loss as a result, Gulf had a right to indemnity for the entire amount of its loss, regardless of its own contributory negligence. The contract also contained a provision allocating to Dravo responsibility for constructing barriers necessary to protect Dravo's employees from hazards caused by the construction operation.

Decoking is a step in the coke production process in which solidified, porous coke is broken up, dislodged from large drums, and loaded onto rail cars for transporting. The drums are suspended several feet above a railroad track. A stream of high-pressure hot water breaks up the solidified coke, and the mixture of coke and hot water falls into rail cars awaiting below. The water filters through the cars and drains away from the decoking site by way of a sluice.

In the process of constructing its addition to the Gulf coke unit, Dravo excavated a rectangular area approximately sixty feet long, fifty feet wide and twelve feet deep. The excavation was located adjacent to a decoking site that served another Gulf coke unit. A railroad track ran about twelve feet from, and level with, the top of the excavation. Dravo constructed a six-inch ledge at the rim of the excavation to divert coke and water that might spill over into the excavation from the nearby decoking operation. Although the rim adequately diverted some routine spill-over, Dravo's employees constantly were annoyed by coke and water spilling over and splashing from the decoking operation. To help alleviate the splashing problem, Dravo suspended a tarpaulin above the operation to shield its construction workers. The workers, however, continued to complain about the nuisance and hazard caused by escaping hot water and coke.

Because of the dangers inherent in decoking, especially at the point at which the hot water initially breaks through the solid coke, Gulf customarily positioned two men, one at the level of the coke drum, and one above him, to guard against mishaps. These men were to oversee the operation and warn anyone within earshot to move out of the area. Gulf also blew a ten-second whistle to notify everyone in the general area of an impending breakthrough. Gulf, however, also used shorter blasts of the same whistle to communicate other messages, and Dravo's employees could not readily distinguish the ten-second blast from the shorter blasts. At the construction workers' suggestion, Dravo's safety man indicated that he would ask Gulf to have someone step over to the excavation and warn the Dravo construction site workers verbally to move out of the reach of coke and water spill-over and splashing. Gulf, however, gave no verbal warnings prior to Kemp's accident, evidently because of a communications problem resulting from a change in Gulf supervisory personnel.

In September of 1981 Kemp, a carpenter, was working near the Dravo excavation when a break-through occurred. He may not have heard or understood the significance of the ten-second whistle, and was not warned verbally to move away. When the coke and hot water fell into the waiting rail car, the doors of the car either collapsed or flew open from the pressure, and the coke and water mixture overflowed Dravo's protective rim and flooded the excavation. The deluge knocked Kemp into the excavation, injuring him severely. Although such incidents, called "cave-ins," are unusual and unpredictable, another of Dravo's employees had witnessed a substantially similar incident just days prior to Kemp's accident.

Kemp filed suit against Gulf, who, in turn, filed a third-party complaint against Dravo for indemnification. A jury found Gulf to be ninety percent responsible for Kemp's injuries, and Dravo to be ten percent responsible. In its final order, the district court concluded as a matter of law that Kemp's injuries arose in connection with Dravo's contract work and entered judgment against Dravo. Dravo appeals.

## II.

Dravo first contends that the accident did not occur "in connection with" its

work on the Gulf construction project contemplated by the indemnity clause of the construction contract. Although a court should not construe an indemnity clause to impose liability for a loss neither expressly within its terms nor of such a character that the parties probably intended to exclude the loss, it should construe the indemnity clause to cover all losses "which reasonably appear to have been within [the parties'] contemplation." *Corbitt v. Diamond M. Drilling Co.*, 654 F.2d 329, 333 (5th Cir.1981). Interpretation of the terms of a contract, including an indemnity clause, is a matter of law, reviewable *de novo* on appeal. *City of Austin v. Decker Coal Co.*, 701 F.2d 420, 425 (5th Cir.1983); *Matador Drilling Co. v. Post*, 662 F.2d 1190, 1195 (5th Cir.1981); *Eaton v. Courtaulds of North America, Inc.*, 578 F.2d 87, 90 (5th Cir.1978). We hold that the district court correctly interpreted the indemnity clause and that Kemp's injuries occurred "in connection with" work being performed by Dravo for Gulf.

Kemp's accident occurred during working hours and while Kemp was performing work necessary for Dravo's fulfillment of its contractual obligation to Gulf. The terms of the clause itself expressly include "injuries (including death) to any person." The only reasonable conclusion to draw from the facts and the language of the clause is that the parties intended for Dravo to indemnify Gulf for this type of loss, provided, of course, that Dravo has the partial responsibility necessary to trigger the indemnity clause. *See City of Jackson v. Filtrol Corp.*, 624 F.2d 1384, 1387–88 (5th Cir.1980); *Alamo Lumber Co. v. Warren Petroleum Corp.*, 316 F.2d 287 (5th Cir.1973). *Cf. McClane v. Sun Oil Co.*, 634 F.2d 855, 860 (5th Cir.1981) (indemnity clause did not cover losses arising *solely* from owner's negligence).

## III.

Dravo next contends that it was not at all responsible for Kemp's accident, and that Gulf alone was responsible both for the cave-in and for the absence of adequate warnings and safety measures leading to Kemp's injuries. Our own review of the record in this case, however, reveals evidence sufficient for a jury to attribute ten percent of the responsibility for Kemp's accident to Dravo.

Although Dravo had no way of knowing exactly when a cave-in might occur, it knew of the possibility of such incidents. It also knew that because of their closeness to the decoking operation, its construction workers at the Gulf construction site were especially vulnerable to resulting annoyance and mishap. An incident similar to the one which caused Kemp's injuries had occurred at the construction site just a few days earlier, and Dravo's employees had complained repeatedly of the hazard and annoyance caused by escaping coke and hot water. Evidence exists in the record to support a jury conclusion that Dravo failed to instruct its employees adequately on the meaning of the ten-second whistle, or failed to insist that Gulf explicitly warn Dravo's workers of an imminent break-through. Further, under the terms of the construction contract, Dravo had responsibility for erecting barriers and structures to protect its workers. A jury reasonably could have concluded that the six-inch rim along the edge of the excavation and the tarpaulin designed to divert splashes were inadequate in the light of the amount of annoyance the decoking operation caused the workers and the dangers to which they were exposed. In short, we conclude that the record contains enough evidence for the jury to conclude as it did—that Dravo bears at least a small percentage of the responsibility for Kemp's accident.

The order of the district court is, therefore, AFFIRMED.