**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**

October 10, 2011

Lyle W. Cayce
Clerk

No.  10-20381

GREATER HOUSTON SMALL TAXICAB COMPANY OWNERS
ASSOCIATION,

                                        Plaintiff - Appellant

v.

CITY OF HOUSTON, TEXAS,

                                        Defendant - Appellee

Appeal from the United States District Court
for the Southern District of Texas

Before JONES, Chief Judge, and KING and BARKSDALE, Circuit Judges.

EDITH H. JONES, Chief Judge:

The Greater Houston Small Taxicab Company Owners Association, a group representing taxicab companies that hold only one to three permits for cabs, asserts that the City of Houston's plan to distribute new taxicab permits violates the Equal Protection Clause of the Fourteenth Amendment. The district court granted summary judgment to the City. We AFFIRM.

No. 10-20381

# I. BACKGROUND

## A.    The Ordinance at Issue

On December 12, 2007, the Houston City Council ("the City") passed Ordinance 2007-1419 ("the Ordinance") authorizing 211 additional taxicab permits to be allocated over the subsequent four-year period. New taxicab permits had not been issued in Houston since 2001, and the City wanted to expand its cab fleets. The ordinance planned to distribute new permits based on the size of the taxi company. The size categories are:

| Number of current permits | Classification |
|---|---|
| 80+ | Large |
| 25 - 79 | Mid-large |
| 4 - 24 | Mid-small |
| 1 - 3 | Small |
| 0 | New entrant |

The 211 permits would be issued over the course of four years as follows:

| | Year 1 | Year 2 | Year 3 | Year 4 |
|---|---|---|---|---|
| Large companies (4 total) | 28 | 28 | 28 | 24 |
| Mid-large companies (4 total) | 12 | 12 | 8 | 8 |
| Mid-small companies (12 total) | 12 | 12 | 12 | 0 |
| Small companies (117 total) | 16[1] | 0 | 0 | 0 |
| New entrants | 11 | 0 | 0 | 0 |
| **TOTAL** | **79** | **52** | **48** | **32** |

---

[1] The 16 were to be chosen by lottery from among the 117 existing small taxi companies.

2

No. 10-20381

As the chart illustrates, small companies would enter a lottery for 16 new permits in the first year, and would have no opportunities for additional permits in years 2-4.

The City developed this plan after consulting with a number of key stakeholders. It formed a "Taxicab Working Group" comprising current taxi permit holders, community leaders, and City Council members. The group, which included three sub-committees, met over the course of several months to develop the proposal that ultimately became the Ordinance.

Most of the reasoning behind this distribution scheme is explained in the Ordinance's preamble and in a memo to the City drafted by the City's Finance and Administration Director. The City viewed the four large companies as "full-service taxicab companies" in that they offer, among other things, full 24-hour radio dispatch services and complete on-site repair facilities for their vehicles. The mid-large companies offer only "limited radio dispatch services." Mid-small and small companies, by contrast, generally do not offer 24-hour service; they communicate by cell phone and tend to operate primarily at the airports. The City concluded further that larger taxi companies are better able to provide disabled access vehicles and more efficient, environmentally friendly taxicabs.

As a supplement to this distribution scheme, the Code of Ordinances for the City authorizes additional permitting in limited circumstances. Under § 46-66(d), "a qualified other applicant who meets the criteria set forth below may petition the city council requesting that he be granted permits or additional permits . . . ."[2] Subsection 46-66(e) provides the "total number of additional permits granted to all petitioners" under subsection (d) "may not exceed 25

_____

[2] Subsection 46-66(d) is already part of the City Code and pre-dates the Ordinance. The parties agree that the Ordinance would not affect § 46-66(d).

percent of the available permit number." According to the City, this provision acts as a safeguard to provide additional permit opportunities for smaller companies that could, in fact, provide the same services as the larger taxi companies.

### B.    Proceedings

Plaintiff-appellant, the Greater Houston Small Taxicab Company Owners Association ("the Association"), represents approximately 60 of the 117 small taxi companies that each hold one to three taxi permits with the City. The Association filed an action under 42 U.S.C. § 1983 against the City in May 2008, arguing that the distribution proposal in the Ordinance violated the Fourteenth Amendment's Equal Protection Clause. The Association first obtained a temporary restraining order preventing the City from enforcing the distribution plan. The Association then sought declaratory and injunctive relief.

The City moved to dismiss. Following limited discovery, the court converted the motion to dismiss to a motion for summary judgment and held for the City. The Association has timely appealed.

## II.  DISCUSSION

"This court reviews the district court's grant of summary judgment *de novo*, applying the same standards as the district court. Summary judgment is warranted if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine [dispute] as to any material fact and that the movant is entitled to judgment as a matter of law." *DePree v. Saunders*, 588 F.3d 282, 286 (5th Cir. 2009) (internal citations and quotations omitted); *see also* FED. R. CIV. P. 56(a).

On appeal, the Association contends that the Ordinance violates equal protection by drawing impermissible distinctions between taxi companies based

No.  10-20381

on their size.[3]  The Association claims that because there is no meaningful distinction in the level of service provided by mid-small taxi companies and small taxi companies, the City cannot permissibly guarantee the growth of the mid-small companies by awarding them many new permits while essentially preventing the growth of 101 out of the 117 small taxi companies that offer the same service.[4]  The Association argues further that the City's real motivation is economic favoritism.

The parties agree that the constitutional challenge at issue is reviewed according to the rational basis test.  Under this standard, a legislative classification will be upheld "if there is a rational relationship between the disparity of treatment and some legitimate governmental purpose."  *Heller v. Doe*, 509 U.S. 312, 320 (1993).  Because all legislation classifies its objects, differential treatment is justified by "any reasonably conceivable state of facts." *Id.* Legislation need not pursue its permissible goal by using the least restrictive means of classification; consequently, the Equal Protection Clause is not violated "merely because the classifications made . . . are imperfect."  *Johnson v.*

---

[3] The Association appears to accept that the City may enact *some* basis to regulate entry into the taxi market.  The Association has not argued that quotas on taxi permits are *per se* impermissible; it quarrels only with the particulars of this Ordinance.  Our opinion is limited to the Association's arguments.

[4] The City argues that the Association did not raise this argument before the district court, and we therefore should consider it waived.  We disagree.  We have noted that "an argument is not waived on appeal if the argument on the issue before the district court was sufficient to permit the district court to rule on it."  *In re Liljeberg Enters., Inc.*, 304 F.3d 410, 428 n.29 (5th Cir. 2002) (citing *Brown v. Ames*, 201 F.3d 654, 663 (5th Cir. 2000)).  That is the case here.  The record contains numerous references in the proceedings below, by the parties and by the magistrate judge, to the small/medium and full-service/non-full-service distinctions. More important, the district court's order denying the Association's motion for an injunction pending appeal noted that on appeal, the "Association essentially advances the same points and authorities as those in its response to the City's motion for summary judgment."  To be sure, the Association might have raised the argument "more specifically," but it plainly did enough to avoid waiver.

5

No. 10-20381

*Rodriguez*, 110 F.3d 299, 306 (5th Cir.), *cert. denied*, 522 U.S. 995 (1997) (quotation omitted). Despite its deference, however, the rational basis test "is not a toothless one." *Schweiker v. Wilson*, 450 U.S. 221, 234 (1981). A "necessary corollary to and implication of rationality as a test is that there will be situations where proffered reasons are not rational." *Doe v. Pa. Bd. of Prob. & Parole*, 513 F.3d 95, 112 n.9 (3d Cir. 2008). We consider each of those prongs – legitimate purpose and rational relationship – in turn.

## A.    Legitimate Purpose

The Association argues that the Ordinance represents a desire to prefer one or two classes of taxi companies over similarly situated competitors with no resulting public benefit. This, the Association claims, is not a legitimate purpose for a city ordinance.

The Association directs us to a number of cases in which federal courts have invalidated (much different) state and local laws under the rational basis test, but it relies most heavily on *Craigmiles v. Giles*, 312 F.3d 220 (6th Cir. 2002). In *Craigmiles*, the Sixth Circuit overturned a Tennessee law requiring all casket sellers, including those who provided no funeral services, to obtain a funeral director's license. The Sixth Circuit held that the law bore no rational relationship to the goals advocated by the government, which included, *inter alia*, a desire to make businesses that deal with bereaved clients more attuned to the grieving process. *Id.* at 228. The court found that the law advanced an "obvious illegitimate purpose" by imposing "a significant barrier to competition in the casket market." *Id.* The legislature's stated goals were also "pretextual," a "naked attempt to raise a fortress protecting the monopoly rents that funeral directors extract from consumers." *Id.* at 229. The Association interprets

6

No. 10-20381

*Craigmiles* and similar cases to mean that the Equal Protection Clause requires ordinances to further a public goal rather than isolated private interests.

The City counters that its purpose is not economic favoritism, but rather encompasses the goals articulated in Houston's Taxicab Code, "(i) to foster enhanced competition within the taxicab industry, (ii) to increase the level and quality of taxicab service available to the public for other than city airport departure trips, and (iii) to promote more efficient utilization of taxicabs, which purposes should enhance the public satisfaction and generate operating cost and fare savings." Further, the City contends, small and mid-small taxi companies are neither identical nor even similarly situated to each other. The majority of the small companies are solo operators, while mid-small companies operate several vehicles and are far more likely to fulfill the City's purposes.

We believe the City has the stronger argument. First, *Craigmiles* is not helpful to the Association. That case involved a statute that treated very different businesses as though they were the same. We confront the inverse situation: an ordinance that treats similar businesses differently. In *Craigmiles*, there was no logical reason to require casket sellers to obtain funeral director licenses because the types of services at issue were fundamentally different. Here, however, the City has offered a reasonable explanation for the disparate distribution of permits: the larger the taxi company, the more likely it is to offer a broader range of services that better serve consumer needs.

Moreover, even if the City is motivated in part by economic protectionism, there is no real dispute that promoting full-service taxi operations is a legitimate government purpose under the rational basis test. *Craigmiles* and other cases confirm that naked economic preferences are impermissible to the extent that they harm consumers. The record here provides no reason to believe that

consumers will suffer harm under the Ordinance. The Association has not demonstrated that the Ordinance has no legitimate purpose.

### B.     Rational Relationship

The Association contends that even if the City's objective was legitimate, the Ordinance is nevertheless not rationally related to that objective because the Ordinance will not expand full-service taxi operations. But the rationality standard is a low threshold; to be valid, the Ordinance need only "find some footing in the realities of the subject addressed by the legislation." *Heller v. Doe*, 509 U.S. at 321. Because the fit between means and ends need not be mathematically tight, there was no need for further factual development of the rational relationship in this case.

The Association challenges the award of three new permits to each of the 12 companies in the small mid-size category because such a measure will not induce them to begin offering 24-hour dispatch service or other preferred services. Thus, the City's decision to enable those companies to expand, while severely limiting the growth opportunities of the Association's members, was irrational and arbitrary. The Association further asserts that there were several simpler means for the City to achieve its purported goal. For example, the City could have required that a business provide 24-hour dispatch service and/or full on-site repair facilities as conditions for some or all new permits. That the City did not pursue such alternatives, the Association contends, demonstrates a lack of rationality.

These arguments do not persuade us that the Ordinance bears no rational relationship to the City's legitimate goals. The Supreme Court has noted repeatedly that as long as an Ordinance "has some reasonable basis, it does not offend the Constitution simply because the classification is not made with mathematical nicety or because in practice it results in some inequality."

No. 10-20381

*Dandridge v. Williams*, 397 U.S. 471, 485 (1970). The City might have found better methods for distributing new permits, but the Fourteenth Amendment did not require it to do so. The Association's proffered alternative means, in fact, would harm its members far more – by denying them any new permits – than the Ordinance itself. Nor is the distinction between small-midsize and small companies irrational, as the Association contends. Because small-midsize companies may hold up to 24 permits, while the majority of the small companies are solo-operated taxis, there is a greater likelihood that the small-midsize companies will further the City's purposes by offering better, more efficient transportation for the public.

Two other considerations fortify the conclusion that the Ordinance passes constitutional muster. First, Code § 46-66(d) provides that "a qualified other applicant who meets the criteria set forth below may petition the city council requesting that he be granted permits or additional permits . . . ." That a solo taxi operator who fails to win the permit lottery may petition for additional permits acts as a safeguard for any victims of the Ordinance's imperfect distribution scheme and mitigates fears of raw economic favoritism.

Second, the record reflects that the Ordinance will not significantly alter the current market share that small taxi companies enjoy. Before the Ordinance, the small companies held a 6.83% market share; post-Ordinance, after the grant of new permits, their market share will be 6.81% – virtually unchanged. The Ordinance simply preserves the competitive status quo.

The City has done enough to illustrate a rational relationship between its purpose and the Ordinance's means. To be sure, the distribution plan is not narrowly tailored, and there might have been more effective ways of promoting the City's goals. But the Ordinance provides more permits for all operators; it preserves the current market share for solo operators; and there is a mechanism

to convey additional permits to small taxi companies.  That is enough to survive rational basis review.

### III.  CONCLUSION

The Association has not demonstrated that the Ordinance violates the Equal Protection Clause by treating taxi companies differently based on their size.  The judgment of the district court is **AFFIRMED**.