# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

---

No. 13-10403
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**

May 22, 2014

Lyle W. Cayce
Clerk

---

BURNETT RANCHES, LIMITED,
by and through its Tax Matters Partner,

Plaintiff-Appellee,

v.

UNITED STATES OF AMERICA,

Defendant-Appellant.

---

Appeal from the United States District Court
for the Northern District of Texas

---

Before WIENER, OWEN, and HAYNES, Circuit Judges.

WIENER, Circuit Judge.

The United States of America ("the government") appeals the district court's Final Judgment of February 13, 2013, which rejected the government's efforts to tax Burnett Ranches, Limited ("Burnett Ranches") as a "farming syndicate" tax shelter per § 464 of the Internal Revenue Code of 1986 ("I.R.C.").[1] The government targeted the super-majority interest of Anne Burnett Windfohr Marion ("Ms. Marion") in Burnett Raches, title to which she held in the name of her wholly owned subchapter S corporation ("S. corp."),

---

[1] 26 U.S.C. § 464.

No. 13-10403

Burnett Ranches, Inc. ("B.R., Inc."). If the government's efforts had been successful, Burnett Ranches would have been required to report its income as accrued ("accrual method") rather than as received, on the cash-receipts-and-disbursements method ("cash method").

Burnett Ranches insisted that it is exempt from such treatment because Ms. Marion "actively participated" in the management of its ranching business for more than five years prior to the tax years at issue here, and her "interest" in Burnett Ranches is "attributable" to her management. This, Burnett Ranches argued, qualified it for the exception set forth in § 464(c)(2)(A) (the "Active Participation Exception").

The district court denied the government's motion for summary judgment and granted Burnett Ranches's cross-motion. The court postponed the effect of its judgment, however, when it granted the government's motion under Federal Rule of Civil Procedure 56(d) to allow it time to conduct discovery regarding Ms. Marion's active participation.

Following extensive discovery, the government conceded, by stipulation, that (1) Ms. Marion did indeed "actively participate" in the management of Burnett Ranches's agricultural business for not less than five years previously, and (2) her interest in Burnett Ranches is "attributable to" her active participation. Based on the government's stipulated concession, the district court lifted the stay of its final judgment which held that Burnett Ranches qualified for the Active Participation Exception to § 464's farming syndicate rule, irrespective of the fact that, during the tax years in question, title to Ms. Marion's limited partner's interest in Burnett Ranches stood in the name of her S corp., B.R., Inc. We affirm both the district court's denial of the government's motion for summary judgment and its judgment in favor of Burnett Ranches.

2

No. 13-10403

## I.    FACTS AND PROCEEDINGS

### A.    Background

The long and colorful history that culminates with Ms. Marion's decades of active management of Burnett Ranches's agricultural business is a classic example of the horse and cattle ranching history of the State of Texas.  Ms. Marion is just the latest member of the Burnett family to oversee and manage their cattle and horse breeding operations, which are conducted principally on two ranches that have been owned by her and her predecessors for generations—the 6666 Ranch ("Four Sixes Ranch") east of Lubbock, near Guthrie, Texas, and the Dixon Creek Ranch, northeast of Amarillo, near Panhandle, Texas.   The former has been a stereotypical Texas working livestock ranch for more than 150 years and has been operated continuously by a series of direct descendants of Captain S. B. Burnett, who founded the Four Sixes Ranch sometime between the fall of the Alamo and the commencement of the Civil War.

The most recent operator—as the government now concedes—is Ms. Marion.  She was designated Operations Manager of Burnett Ranches's entire ranching business years ago.  She is the sole owner of the Four Sixes Ranch, where some aspects of Burnett Ranches's livestock business are conducted, and she is half owner, individually and through the Tom L. and Anne W. Burnett Trust (the "TLAB Trust")[2] of Dixon Creek Ranch, where other facets of that business are conducted.

The record does not reflect the business or legal reasons behind the structuring of Ms. Marion's ownership of, and Burnett Ranches's operation on, the Four Sixes Ranch and Dixon Creek Ranch through the combination of a

---

[2] The TLAB Trust is Burnett Ranches's tax matters partner.

limited partnership, a trust, and an S corp. But neither the government nor anyone else contends that tax sheltering or minimization had anything whatsoever to do with that arrangement.[3] More to the point of this case, Ms. Marion's business and ownership history with these ranches and their operations is the very antithesis of the "farming syndicate" tax shelters that § 464 was enacted to thwart. In fact, her and her family's uninterrupted history with the farming operations and the lands on which they are conducted could be the poster child for Congress's inclusion of the Active Participation Exception in § 464 to exempt such entities and their substantial hands-in-the-dirt owners and operators from that section's reach.

Regardless of the government's last-ditch, "gotcha" contention that the interposition of Ms. Marion's S corp. between her and Burnett Ranches stymies the latter entity from qualifying for the Active Participation Exception, there is no question that, for a cash-basis taxpayer, the income tax results would be exactly the same, with or without that S corp. in her chain of title. Whether Ms. Marion's interest in Burnett Ranches were held in her own name or in the name of her wholly owned S corp. (which are universally recognized as being purely pass-through entities for federal income tax purposes), she would owe precisely the same income taxes. Yet, after it was forced to stipulate that, for purposes of § 464's farming syndicate rules, (1) Ms. Marion was an active participant in the farming operations at all relevant times, and (2) her interest in the limited partnership was attributable to her active participation, the government's *sole basis* for continuing to assert that millions of dollars of additional tax are owed through the accrual method of accounting has been the

---

[3] Indeed, if the government were pursuing a tort or contract claim against Ms. Marion, it would likely seek to pierce the S corp.'s veil to hold it the alter ego of Ms. Marion.

presence of her S corp.  Whether that exceedingly slender reed can prop up the government's case is the only question presented in this appeal.

**B.    Proceedings**

The government determined that Burnett Ranches could not file income tax returns on the cash method of accounting for tax years 2005, 2006, and 2007.  The reason given was that Burnett Ranches was a tax shelter under I.R.C. § 448 by virtue of being a "farming syndicate" under § 464 and therefore had to employ the accrual method of tax accounting.  Burnett Ranches challenged that determination by filing the instant action in the district court after Ms. Marion provided substantial funds against the government's tax assessment.

Each party filed a motion for summary judgment on the issue whether Ms. Marion's management of the ranching operation qualifies Burnett Ranches for the Active Participation Exception.  The government ultimately stipulated to her requisite participation in management and to her interest in Burnett Ranches being attributable to that participation, thereby eliminating any genuine issues of material fact.  The government nevertheless insisted, and continues do so on appeal, that Ms. Marion's ownership of her interest in Burnett Ranches through BR, Inc. blocked Burnett Ranches's qualification for the Active Participation Exception and thus required it to use the accrual method of accounting for tax purposes.  The district court rejected the government's position, lifted the stay of its earlier ruling, and made final its judgment in favor of Burnett Ranches.  The government timely filed a notice of appeal.

No. 13-10403

## II.   ANALYSIS

### A.   Standard of Review

We review the grant of summary judgment *de novo*, applying the same standards as the district court.[4]  "Summary judgment is warranted if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine [dispute] as to any material fact and that the movant is entitled to judgment as a matter of law."[5]  When, as here, the opposing parties file cross-motions for summary judgment, we review "each party's motion independently, viewing the evidence and inferences in the light most favorable to the nonmoving party."[6]

### B.   Issue on Appeal

Given the government's stipulations, this appeal implicates no issues of fact and but a single question of law:  Does Ms. Marion's ownership of her interest in Burnett Ranches through B.R., Inc., her wholly owned S corp., rather than directly in her own name, render nugatory Burnett Ranches's invocation of the Active Participation Exception, which unquestionably would apply if Ms. Marion held title to her limited partnership interest in Burnett Ranches in her own name?

### C.   Discussion

The income tax loophole that Congress sought to close in adopting § 464 was the practice of forming limited partnerships and similar investment entities to acquire interests in agricultural trades or businesses that had large tax operating losses, then selling fractional interests in such investment entities to sophisticated passive "investors" who had nothing whatsoever to do

---

[4] *Duval v. N. Assurance Co. of Am.*, 722 F.3d 300, 303 (5th Cir. 2013).

[5] *Id.* (quoting *DePree v. Saunders,* 588 F.3d 282, 286 (5th Cir. 2009).

[6] *Ford Motor Co. v. Tex. Dep't of Transp.*, 264 F.3d 493, 498 (5th Cir. 2001).

with farming but who had large taxable incomes. Such "limited entrepreneurs" would offset their respective shares of the farm's tax losses against their unrelated taxable incomes.

When it adopted § 464, however, Congress recognized that the tax loophole it was seeking to close was not one employed by individuals, families, and entities legitimately and directly engaged in agricultural enterprises. That is why Congress included subsection (c)(2) in § 464, *viz.*, to identify and define—in sub-subsections (A) through (E)—five categories of taxpayers whose bona fide interests in agricultural endeavors Congress meant to exempt from the coverage of § 464 *because* such interests are attributable in substantial part to long-term, active management of such farming enterprises. For today's purposes, § 464—which defines "farming syndicate" and refers to the congressionally targeted high-income, non-farmer investors as "limited partners" or "limited entrepreneurs"—also defines, in sub-subsection (A) of subsection (c)(2), the particular category of bona fide farmers like Ms. Marion who are *not* covered by § 464, to wit:

> Holdings attributable to active management. . . . [T]he following shall be treated as an interest which is **not held** by a limited partner or a limited entrepreneur:
>
> > (A) In the case of any individual [*viz.*, Ms. Marion] who has actively participated (for a period of not less than five years) in the management of any trade or business of farming [*viz.,* Burnett Ranches's livestock business], any interest in a partnership or other enterprise [*viz.*, Ms. Marion's interest in the limited partnership, Burnett Ranches, that she held in the name of BR, Inc.] which is attributable to such active participation[.][7]

---

[7] 26 U.S.C. § 464(c)(2)(A) (emphasis and bracketed identifications added). Written with a bit less convolution, subsection (c)(2)(A) might read:

Congress thus expressly provided that *any* interest in an agricultural venture that is "attributable to" an individual's "active participation" in the "management" of the farming activity for more than five years is *not* to be treated as the interest of a proscribed limited partner or limited entrepreneur. Importantly, Congress did *not* restrict sub-subsection (A)'s particular exception to interests of which such an actively participating manager holds legal title in his or her name.

To accept the government's overly expansive reading of § 464 by crediting its overly narrow reading of the Active Participation Exception would be to sanction "administrative legislation" by an Article II executive agency.[8] This we decline to do, agreeing instead with the district court that the government's efforts fail, grounded as they are in nothing more than the fact that legal title to Ms. Marion's interest in Burnett Ranches stands in the name of her S corp. Indeed, this is a classic example of a difference that does not constitute a distinction.

We repeat for emphasis that, given the government's stipulations, there are no genuine disputes of material fact and only one question of law, *viz.*, whether the interposition of Ms. Marion's S corp. changes the result of this case. As an issue of first impression, our decision begins—and ends in this case—with statutory interpretation.

---

> Any interest in a partnership or other enterprise that is attributable to the active participation of any individual (for a period of not less than five years) in the management of any farming trade or business of such entity shall not be treated as an interest held by a limited partner or limited entrepreneur.

[8] U.S. Const. art. I, § 1 ("All legislative Powers herein granted shall be vested in a Congress."); *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 472 (2001).

In our *de novo* interpretation of § 464, we look first and foremost to the plain meaning of each word; to each word's meaning relative to the other words of the statute; and to such meaning in the context of the statute's structure, word sequence, grammar, punctuation, syntax, inclusion or omission of words and phrases, and the like.[9]  Although the I.R.C is less than pellucid on first reading, as it contains many cross-references, is structured with convoluted syntax, and is anything but "simple and direct," we still give each word its ordinary meaning unless it is a term of art expressly defined in the statute;[10] and we will find no word or phrase ambiguous unless it is susceptible of more than one *reasonable* interpretation.[11]  With these familiar precepts of statutory construction in mind, we start with the district court's analysis of the farm syndicate provision of § 464 in general and its Active Participation Exception in particular.

The government's contention that Ms. Marion's holding of her share of Burnett Ranches in the name of her S corp. prevents its qualifying for the Active Participation Exception is based on the use of the word "interest," both in subsection 464(c)(2) and in its sub-subsection (A).  The government insists

---

[9] *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 251 (2010) ("When faced with questions of statutory construction, we must first determine whether the statutory text is plain and unambiguous and, if it is, we must apply the statute according to its terms.  The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole. If the statutory text is unambiguous, our inquiry begins and ends with the text.") (internal quotation marks, citations and brackets omitted).

[10] *Kaltenbach v. Richards*, 464 F.3d 524, 528 (5th Cir. 2006) ("It is a cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.") (internal quotation marks and citations omitted).

[11] *In re Rogers*, 513 F.3d 212, 226 (5th Cir. 2008) ("For the language to be considered ambiguous, . . . it must be susceptible to more than one reasonable interpretation or more than one accepted meaning.  However, a statute is not ambiguous simply because it is inartfully drafted.") (internal citations omitted).

that "an interest" in subsection (c)(2) and "any interest" in sub-subsection (A) must be narrowly construed as synonymous with *legal* title or direct ownership.  But in the statute itself, neither of these uses of "interest" is thus restrictively modified.  And, without a narrowing modifier, "interest" is not restricted to an ownership formally vested by legal title:  It must be construed in the broader dictionary sense of involvement with or participation in something; a right, claim, or share in something; or "something in which such a right, claim, or share is held."[12]  Similarly, "interest" includes "the fact or relation of having a share or concern in, or a right to, something. . . .  A thing which is to the advantage of someone".[13]

Not having expressly limited the use of "interest" in § 464(c)(2) to formal, legal title, and having expansively referred to "*any* interest" in sub-subsection (A), Congress must be deemed to have used the word in its broadest, generic sense, with no intention of narrowing the meaning of "interest" to cover only technically titled ownership.  Thus, under sub-subsection (A), five years of active participation in farm management qualifies "any" interest in the partnership or enterprise for the exception as long as it is attributable to such participation: not just interests that are legally held or titled, but also indirect or beneficial interests.

Additionally, in relying solely on the interposition of the S corp. between Ms. Marion and Burnett Ranches to prevent it from qualifying for the Active Participation Exception and thereby bring Burnett Ranches under § 464, the government fails to connect the dots with § 464(c)(1)(B), in which Congress expressly eliminates an "S corporation" from the types of legal entities which

---

[12] *The Am. Heritage Dictionary of the English Language* 683 (William Morris ed., 1976).

[13] 1 *The New Shorter Oxford English Dictionary on Historical Principles* 1393 (4th ed. 1993).

that subsection subjects to farming syndicate status.  In so doing, Congress at least implicitly recognized the tax status of S corps. as purely flow-through entities.  Surely, S corps. cannot be recognized as being outside the pale in defining farming syndicates, only to be treated as preventing active-participation status in a partnership or enterprise in which the *interest* of the active participant happens to be held in a S corp. for some reason unrelated to taxes.

As the district court cogently emphasized, the statutory language of the Active Participation Exception applies to "any interest" that is attributable to the individual's active participation in management.  We embrace the district court's observation that there is "no meaningful basis for distinguishing between the partnership interest of a rancher who has structured his business as a sole proprietorship and a rancher who has structured his business as [a subchapter S] corporation."  This is underscored by the fact that "individual" is used in subsection § 464(c)(2) and in its sub-subsection (A), in reference to the providing of active management services, *not* in reference to the technical method of having an interest in the venture.

In explaining its judgment in favor of Burnett Ranches, the district court summed up the gist of its decision as follows:

> [T]he language in subsection 464(c)(2)(A) does not restrict application of the Active-Participation Exception to individuals.  Rather, the statutory language indicates that the exception applies to *any interests* in a partnership that is *attributable to* an individual's active participation in the management of a farming business for more than five years. . . . This interpretation of Section 464(c)(2)(A) maintains consistency with the purpose of the farming-syndicate rules without needlessly expanding their scope. . . . Congress did not intend to deprive genuine farmers or ranchers of their previously enjoyed tax benefits.

11

In support of the district court's statutory interpretation of the Active Participation Exception for persons in Ms. Marion's position, Burnett Ranches notes that the government ignores a telling difference between the two exceptions respectively identified in sub-subsections (A) and (E) of subsection § 464(c)(2). Sub-subsection (A)'s exception applies to "any *interest in* a partnership" while sub-subsection (E)'s exception applies to "any interest *held* by a member of the family. . . of a grandparent of an individual." This difference is a prime example of the "well-established principle of statutory construction that where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion."[14] As it did in sub-subsection (E), Congress could have limited sub-subsection (A) to "any interest held by" the individual who actively participated in the management of the farming enterprise. Instead, however, it specified that sub-subsection (A)'s exception applies to "any interest in [such] a partnership or other enterprise." That difference cannot be ascribed to inadvertence.

The government attempts to dissuade us from adopting this reading of § 464 by pointing to the purported administrative burdens our decision will engender. It contends that, in cases when the tiered ownership structure is more complicated than Ms. Marion's full ownership of B.R., Inc., such as an S corp. with multiple shareholders, it will be put in the position of "having to trace the indirect ownership of a partnership interest through a potential labyrinth of pass-through" entities. First, our holding today is limited to the facts before us: an interest in a pass-through entity *solely owned* by the

---

[14] *Kashanchi v. Tex. Commerce Med. Bank, N.A.*, 703 F.2d 936, 939 (5th Cir. 1983) (internal quotation marks omitted) (quoting *United States v. Wong Kim Bo*, 472 F.2d 720, 722 (5th Cir. 1972)).

individual who has actively participated in the management of a farming business.  Second, we doubt that our interpretation of § 464 will stymie the I.R.S., an agency tasked with uncovering abusive tax-avoidance schemes of myriad forms, not just those in the nature of a farming syndicate.  The government's duty is to determine whether to require proof that the Active Participation Exception in fact applies.[15]  Therefore, if it doubts that an interest is attributable to an individual who has actively participated in the management of a farming business, the government may place the burden on the individual to establish that he or she satisfies § 464(c)(2)(A).[16]

By now, our admittedly belabored point should be obvious:  Even though it is held in the name of B.R., Inc., Ms. Marion's interest in Burnett Ranches is directly attributable to her long-term active participation in the management of the agricultural business of that entity.  We deem it beyond peradventure that her limited partnership interest in Burnett Ranches is excepted from § 464's primary thrust of requiring farming syndicates to employ the accrual basis for accounting.

In summary, we agree with the district court that an otherwise qualified individual who has participated in management of the farming operations for not less than five years comes within the Active Participation Exception embodied in § 464(c)(2)(A), irrespective of the fact that the legal title of such individual's attributable interest happens to be held in the name of her wholly owned S corp. rather than in her own name.  Accordingly, the district court's Final Judgment is, in all respects,

---

[15] *See, e.g., Sw. Life Ins. Co. v. United States*, 560 F.2d 627, 635 (5th Cir. 1977) ("The presumption of correctness that follows the deficiency notice places the burden on the taxpayer of establishing all matters necessary to show that it does not owe the taxes in question.").

[16] *Id.*

No. 13-10403

AFFIRMED.